# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 13-57** |
| **MARK HEBERT** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendant Mark Hebert's Petition for Relief under 28 U.S.C. § 2255 (Doc. 171). For the following reasons, the Petition is **DENIED**.

## BACKGROUND

On March 28, 2013, the Government charged Defendant Mark Hebert, a former Jefferson Parish sheriff's deputy, with numerous federal offenses in a 60-count Indictment. Among the charges in the Indictment were one count of deprivation of rights under the color of law, forty-eight counts of bank fraud, four counts of computer fraud, two counts of aggravated identity theft, and five counts of obstruction of a federal investigation.[1] None of the charged offenses included murder as an element of the offense. One of the bank fraud counts, however, included the following allegation:

> It was further part of the scheme and artifice to defraud that the defendant, Mark Hebert, with specific intent, did kill, or participate in conduct that caused the death of, Albert Bloch to obtain VISA Replacement ATM/Debit Card #8461 and to prevent

---

[1] Doc. 1.

1

Albert Bloch from reporting to a law enforcement officer the scheme and artifice to defraud, deprivation of rights under color of law, and any other crimes alleged in this Indictment.[2]

On November 20, 2013, Hebert pleaded guilty to Counts 1 (deprivation of rights under color of law); 2, 39, 41, 42, and 44 (bank fraud); and 54 (aggravated identity theft).[3] Between July 21 and July 24, 2014, the Court held a sentencing hearing.[4] The focus of that hearing was to determine whether Hebert killed Bloch. The Court heard testimony from many witnesses and admitted a significant amount of physical evidence into the record during the hearing. Ultimately, the Court found that the Government had shown by clear and convincing evidence that Hebert killed Bloch.

On November 10, 2014, the Court sentenced Hebert to 92 years in prison. The Court justified Hebert's sentence on two independent grounds. The first involved application of the "cross reference" provision of the U.S. Sentencing Guidelines. The Guidelines provide that when a defendant is convicted under a statute proscribing "fraudulent statements or representations generally" and "the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline in Chapter Two [of the Guidelines]," the court should apply the other guideline—not the fraud guideline—when calculating the sentence for the fraud conviction.[5] That is, the Court must cross reference the non-fraud guideline to determine a defendant's sentence for a fraud conviction.

Here, Hebert pleaded guilty to five counts of bank fraud under 18 U.S.C. § 1344, which proscribes "obtain[ing] any of the money, funds, credits, assets, securities, or other property owned by . . . a financial institution, *by means of*

---

[2] *Id.* at 5.
[3] Doc. 38.
[4] *See* Docs. 71, 72, 73, and 74.
[5] U.S.S.G. § 2B1.1(c)(3).

*false or fraudulent pretenses, representations, or promises.*"[6] Thus, Hebert was convicted under a statute that prohibited fraudulent representations. Additionally, the Court interpreted "count of conviction" to mean the Indictment; the Indictment set forth a charge that Hebert intentionally killed Bloch; an intentional killing constitutes second degree murder; and Chapter Two of the Guidelines covers second degree murder.[7] Thus, the Court applied the Guidelines for second degree murder to Hebert's bank fraud convictions, which resulted in a within-Guidelines sentence of 92 years.[8]

The Court also explained that "in the event it is found that the cross-reference does not apply, [the Court] would have applied a substantial upward variance and this sentence would have been exactly the same."[9] The Court detailed the reasons for the upward variance as follows:

> I have no doubt that Mr. Hebert killed Mr. Bloch and disposed of his body for his personal financial gain. Mr. Hebert, you used your position of trust and authority to satisfy your insatiable desire for money and property of other people. For reasons that I will never understand, that was not enough. You wanted everything that belonged to Albert Bloch, even his life. Mr. Hebert, like many parents, I have taught my children from the time they were babies that they could rely on and trust police officers. Your violation of that sacred trust is unconscionable. This heinous crime is beyond comprehension.[10]

The Court continued,

> considering the factors in 18 U.S.C. § 3553 that require the Court to impose a sentence that is sufficient but not greater than necessary to comply with its purposes and that the Court consider the nature and circumstances of the offense and the history and characteristics of the defendant, this sentence would reflect the

---

[6] 18 U.S.C. § 1344(2) (emphasis added).
[7] *See* U.S.S.G. § 2A1.2.
[8] *See* Doc. 118 at 35–36.
[9] *Id.* at 35.
[10] *Id.* at 35–36.

3

seriousness of the offense, would promote respect for the law, and would provide just punishment for the offense. It would also protect the public from further crimes of the defendant and deter further criminal conduct.[11]

Hebert asked the Court to reconsider his sentence, but the Court rejected his request.[12]

Hebert subsequently appealed this Court's judgment to the Fifth Circuit, arguing that: the Government failed to prove that Hebert killed Bloch; the Court erred in applying the Sentencing Guidelines to Hebert; the Court violated Hebert's Fifth and Sixth Amendment rights by sentencing him based on a killing that a jury never convicted him of committing; and Hebert's sentence violated the Eighth Amendment. The Fifth Circuit rejected Hebert's arguments, affirming the Court's 92-year sentence.[13] The U.S. Supreme Court denied Hebert's petition for writ of certiorari.[14]

On October 17, 2017, Hebert timely filed the instant Petition seeking relief under 28 U.S.C. § 2255. He seeks relief from his sentence on four grounds: (1) that his "jury trial rights were violated when he was subjected to a pseudo-trial at sentencing;" (2) that "[t]he Guidelines cross-reference was applied in error;" (3) that his trial counsel was constitutionally deficient "for failing to present mitigation evidence at sentencing;" and (4) that his trial counsel's "defense against the uncharged murder was constitutionally deficient."[15] The Government opposes Hebert's Petition.[16]

---

[11] *Id.* at 36.
[12] *See* Docs. 122, 133.
[13] United States v. Hebert, 813 F.3d 551, 566 (5th Cir. 2015).
[14] Hebert v. United States, 137 S. Ct. 37 (2016).
[15] Doc. 171.
[16] *See* Doc. 177.

4

## **LEGAL STANDARD**

28 U.S.C. § 2255(a) provides a prisoner four grounds upon which he may seek relief from his sentence: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack."[17] If a court finds that any of the four grounds exist, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[18] Nevertheless, "[r]elief under § 2255 is 'reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'"[19] "A district court may deny a § 2255 motion without conducting any type of evidentiary hearing if 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"[20]

---

[17] 28 U.S.C. § 2255(a).
[18] *Id.* § 2255(b).
[19] United States v. Casby, No. 11-0130, 2018 WL 6602088, at *2 (E.D. La. Dec. 17, 2018) (Fallon, J.) (quoting United States v. Acklen, 47 F.3d 739, 741 (5th Cir. 1995)).
[20] United States v. Jauregui, No. 13-67, 2018 WL 321708, at *2 (E.D. La. Jan. 8, 2018) (Zainey, J.) (quoting U.S. v. Arguellas, 78 Fed. Appx. 984, 986 (5th Cir. 2003)).

# LAW AND ANALYSIS

## I. Hebert cannot now claim that his "jury trial rights were violated" or that this Court misapplied the Sentencing Guidelines because in his plea agreement he waived his right to make those types of challenges in a § 2255 petition

"[A] defendant may waive his right to direct appeal and collateral attack of a conviction and sentence by means of a plea agreement, so long as the waiver is both knowing and voluntary."[21] "A waiver is both knowing and voluntary if the defendant indicates that he read and understood the agreement and the agreement contains an 'explicit, unambiguous waiver'" of the relief sought by the defendant.[22]

Hebert indicated to this Court that he read and understood his plea agreement. The agreement was signed by Hebert and his trial counsel on November 20, 2013, the date of Hebert's rearraignment.[23] During the rearraignment, the following exchange occurred:

> THE COURT: Do you fully understand that by pleading guilty you're waiving your right to an appeal and to contest your sentence in any post-conviction proceeding except under the very limited circumstances outlined in the plea agreement?
>
> THE DEFENDANT: Yes.[24]

When a prosecutor asked Hebert whether he "sign[ed] [the plea agreement] freely and voluntarily," Hebert said "[y]es, sir."[25] When the Court again asked Hebert whether he "fully underst[ood] the consequences of [his] guilty plea"

---

[21] United States v. Potter, No. 13-141, 2015 WL 3486446, at *1 (E.D. La. June 1, 2015) (Feldman, J.) (citing United States v. Bond, 414 F.3d 542, 544 (5th Cir. 2005)).
[22] United States v. Keele, 755 F.3d 752, 754 (5th Cir. 2014) (quoting United States v. McKinney, 406 F.3d 744, 746 (5th Cir. 2005)).
[23] *See* Doc. 36 at 4 (showing signatures and dates on the agreement).
[24] Doc. 153 at 10.
[25] *Id.* at 16.

and whether he was "pleading guilty voluntarily and of [his] own free will," Hebert answered "[y]es, ma'am."[26] Thus, Hebert clearly indicated that he read and understood his plea agreement.

Furthermore, the plea agreement contains an explicit and unambiguous waiver of Hebert's right to seek the relief he currently seeks in his § 2255 Petition. The agreement provides:

> Acknowledging these rights, subject only to the exceptions indicated in subsection (d) below, the defendant, in exchange for the promise(s) and agreement(s) made by the United States in this plea agreement, knowingly and voluntarily: . . .
>
> (c) Waives and gives up any right to challenge his sentence collaterally, including but not limited to any and all rights which arise under Title 28, United States Code, Sections 2255 . . .
>
> (d) The defendant specifically does not waive, and retains the right to bring a *direct appeal* of any sentence imposed. The defendant also retains the right to bring a *post-conviction challenge* if he establishes that ineffective assistance of counsel *directly affected the validity of this waiver of appeal and collateral challenge rights or the validity of the guilty plea itself.*[27]

By the agreement's terms, Hebert waived his right to challenge his sentence excepted on very limited grounds. It is clear that the first two challenges raised in Hebert's petition—that his Sixth Amendment right to a jury trial was violated and that this Court erroneously applied the Sentencing Guidelines to Hebert—fell within the waiver.[28]

When a § 2255 petition fails to allege that a plea agreement was signed unknowingly or involuntarily, "and the record contains no indication that ratification of the plea agreement was not 'voluntary' or knowledgeable, the

---

[26] *Id.* at 25.
[27] Doc. 36 at 3 (emphasis added).
[28] The Government does not argue that Hebert waived his right to challenge his sentence on ineffective assistance of counsel grounds. *See* Doc. 177 at 4, 12–20.

7

Court will hold the defendant to the bargain that he made . . . ."[29] Other sections of this court have interpreted the exact language in Hebert's plea agreement as a bar to a § 2255 petition.[30] As such, this Court finds that Hebert knowingly and voluntarily waived his right to challenge his sentence on the first two grounds raised in his Petition.[31]

## II. Hebert did not receive ineffective assistance of counsel during his sentencing hearing

"The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding," including "during sentencing in both noncapital and capital cases."[32] Nevertheless, "the right to counsel does not guarantee error-free counsel."[33]

The Supreme Court in *Strickland v. Washington* established a two-part test to determine when a defendant's right to effective assistance of counsel has been violated.[34] "To demonstrate that counsel was constitutionally ineffective, a defendant must show that [1] counsel's representation 'fell below an objective standard of reasonableness' *and* [2] that he was prejudiced as a result."[35]

---

[29] *Potter*, 2015 WL 3486446, at *1. *See* United States v. De Cay, No. 05-186, 2009 WL 982099, at *6 (E.D. La. Apr. 9, 2009) (Barbier, J.).

[30] *See* United States v. Andrew, No. 12-266, 2017 WL 6451749, at *3 (E.D. La. Dec. 18, 2017) (Morgan, J.); United States v. Hernandez, No. 11-021, 2014 WL 4072135, at *3 (E.D. La. Aug. 15, 2014) (Duval, J.).

[31] The Court also notes that even if Hebert had not waived his right to make Fifth and Sixth Amendment claims in a § 2255 petition, this Court would be procedurally barred from considering such claims because the Fifth Circuit already rejected those claims in Hebert's direct appeal from this Court's judgment. *See* United States v. Kalish, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions."). *See also Hebert*, 813 F.3d at 565.

[32] Lafler v. Cooper, 566 U.S. 156, 165 (2012) (internal citations omitted).

[33] United States v. Freeman, 818 F.3d 175, 178 (5th Cir. 2016).

[34] Strickland v. Washington, 466 U.S. 668, 687–88, 694 (1984)

[35] Lee v. United States, 137 S. Ct. 1958, 1964 (2017) (quoting *Strickland*, 466 U.S. at 688) (emphasis added).

"When evaluating the first *Strickland* criterion, [the Court] 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"[36] Courts "must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'"[37] Overall, "judicial scrutiny of counsel's performance must be highly deferential."[38]

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[39] "A failure to establish either deficient performance or resulting prejudice defeats the [defendant's] claim."[40]

Here, Hebert argues that his trial counsel, Davidson Ehle, ineffectively assisted Hebert in a constitutionally deficient manner in two ways: (1) by failing to present mitigation evidence during Hebert's sentencing hearing and (2) by failing to sufficiently defend the charge that Hebert murdered Bloch. The Court will consider each argument in turn.

### a. Trial counsel's alleged failure to investigate and present mitigation evidence

Hebert argues that Ehle erred during the sentencing phase of Hebert's criminal proceeding by failing to learn about, sufficiently investigate, and present the following: (1) Hebert's family history of mental illness; (2) a traumatic event involving Hebert's younger brother during Hebert's childhood;

---

[36] United States v. Fields, 565 F.3d 290, 294 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).
[37] *Id.* at 294 (quoting *Strickland*, 466 U.S. at 689).
[38] *Id.* (quoting *Strickland*, 466 U.S. at 689).
[39] *Lafler*, 566 U.S. at (2012) (quoting *Strickland*, 466 U.S. at 694).
[40] United States v. Chavez, 193 F.3d 375, 378 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 697).

9

(3) Hebert's history of substance abuse; (4) brain injuries allegedly suffered by Hebert during vehicle crashes and during an exposure to toxic chemicals; and (5) trauma caused by Hebert's experiences during Hurricane Katrina.[41] In sum, Hebert argues that Ehle should have more fully investigated and presented to this Court evidence regarding Hebert's mental and physical health at sentencing.

At the outset, the Court notes that Hebert fails to present any evidence suggesting that an investigation into any one of these issues would have revealed mitigating evidence. Hebert has not presented any evidence that he actually suffers from a mental illness or brain injury. Nor has he presented evidence showing that he suffers from post-traumatic stress disorder related to a traumatic childhood event.

Regardless, failure to explore these kinds of issues is not the kind of conduct that renders representation constitutionally deficient in a case like Hebert's.[42] "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."[43] Sentencing in this case boiled down to one issue: whether Mark Hebert killed Albert Bloch. Ehle diligently defended his client against this accusation. Ultimately, this Court found that despite Ehle's efforts, the Government produced clear and convincing evidence that Hebert killed Bloch.

As the Supreme Court has noted in a similar context, "[t]his is not a case in which the defendant's attorneys failed to act while potentially powerful

---

[41] *See* Doc. 171.
[42] *See* Williams v. Stephens, 575 F. App'x 380, 386 (5th Cir. 2014) ("Nor does it appear unreasonable for counsel to conclude that further investigation of [the defendant's] background was unnecessary in light of the information that was already discovered and the efforts he had made to obtain professional assistance in uncovering relevant facts.").
[43] Gregory v. Thaler, 601 F.3d 347, 353 (5th Cir. 2010) (quoting *Strickland*, 466 U.S. at 691).

mitigating evidence stared them in the face."[44] "It is instead a case, like *Strickland* itself, in which defense counsel's 'decision not to seek more' mitigating evidence from the defendant's background 'than was already in hand' fell 'well within the range of professionally reasonable judgments.'"[45]

Even assuming, however, that Ehle's alleged shortcomings represented objectively unreasonable representation, Hebert cannot show prejudice because he cannot show that the ultimate sentence handed down by this Court would have been lower if Ehle had focused more on Hebert's mental and physical health during sentencing. This Court was well aware of Hebert's relevant mental issues at sentencing. Hebert's Presentence Investigation Report ("PSR") makes multiple references to the emotional toll that Hurricane Katrina and its aftermath allegedly had on Hebert.[46] Hebert's ex-wife reported to his probation officer that "[s]he feels like Hurricane Katrina may have had something to do with his involvement in the offense" and that "she believes the defendant may be bi-polar."[47] Hebert himself reported that he had "no history of mental health treatment" and had "never sought counseling" but that he "underwent trauma" and was "delusional" after Hurricane Katrina.[48] He also reported that he continued to experience emotional health problems "until on or about 2007," which is when Hebert defrauded Bloch and Bloch disappeared.[49] When specifically given the opportunity to present mitigation evidence during sentencing, Hebert said his "breaking point started with the aftermath of Hurricanes Katrina and Rita in August 2005."[50] He later

---

[44] Bobby v. Van Hook, 558 U.S. 4, 11 (2009).
[45] *Id*. (quoting *Strickland*, 466 U.S. at 699).
[46] *See* Doc. 96 at 28–29.
[47] *Id*. at 28.
[48] *Id*. at 29.
[49] *Id*.
[50] Doc. 118 at 24.

11

admitted that his "life was in total dissolution" at the time he committed the crimes underlying his guilty plea.[51] Because this Court considered Hebert's mental health issues as described both in the PSR and in court by Hebert himself during sentencing, Ehle's alleged failure to further explore his client's mental issues did not prejudice Hebert during sentencing.

None of the allegedly unexplored issues—even if they turned out to be true and had been presented to this Court—would have resulted in Hebert receiving a lower sentence. Ehle's alleged failure to present sufficient mitigation evidence during sentencing was not objectively unreasonable. Even if it had been, the alleged inaction did not prejudice Hebert. Thus, Hebert's ineffective assistance claim on this ground must fail.

### b. Trial counsel's alleged failure to defend against the Government's charge that Hebert murdered Bloch

Hebert also argues that Ehle violated Hebert's Sixth Amendment right to effective representation by failing to sufficiently defend Hebert during the sentencing hearing against the Government's charge that Hebert murdered Bloch. Specifically, Hebert argues that Ehle: (1) ineffectively challenged the fact that Bloch's death was a homicide as opposed to a suicide; (2) failed to propose viable alternate suspects who may have been responsible for Bloch's death; (3) failed to challenge the quality, reliability, and impartiality of law enforcement investigations into Bloch's death; and (4) failed to challenge the credibility of several Government witnesses.[52] Petition's arguments, however, overlook Ehle's measured and methodical defense of Hebert during the sentencing hearing.

---

[51] *Id.* at 25.
[52] *See* Doc. 171-1 at 35.

12

Hebert first argues that Ehle failed to highlight that Bloch was "in a state of crisis and self-destruction [and] could, tragically, have ended his life without any intervening cause."[53] When questioning Bloch's daughter-in-law on cross examination, Ehle asked the following question about Bloch: "So it's more of depression, sadness, the love of his life was gone, and he just didn't have the strength to go on sometimes. Would you agree with that?"[54] When cross-examining Jeremy Horn, a counselor who worked at a disability shelter where Bloch lived for some time, Ehle asked: "What was Mr. Bloch's disability?" to which Horn responded, "If memory serves, his was depression as well as alcoholism."[55] The record shows that Ehle did in fact highlight Bloch's mental state at the time of his disappearance in an apparent effort to suggest that Bloch was not murdered.

Hebert also argues that Ehle failed to challenge the investigation into Bloch's death. During cross-examination of Jefferson Parish Sheriff's Detective Dianne Perrilloux, who investigated Bloch's death, Ehle repeatedly questioned her theory about Bloch's disappearance and ultimately challenged the credibility of Perrilloux herself, referencing Perrilloux's resignation from the Sheriff's Office amid controversy.[56] During his closing argument, Ehle made the following comment regarding the Sheriff's Office investigation into Bloch's disappearance, "You know what, I don't even know if they investigated it. It seems to me they didn't investigate it."[57] Again, the record shows that Ehle in fact questioned the reliability of the investigation into Bloch's disappearance

---

[53] *Id.* at 40.
[54] Doc. 149 at 20.
[55] *Id.* at 218.
[56] *See* Doc. 150 at 158–77.
[57] Doc. 152 at 98.

13

both through his cross-examination of witnesses and during his closing argument.

Hebert additionally argues that Ehle failed to "point the finger" at alternative suspects in Bloch's disappearance and failed to challenge the credibility of several of the Government's witnesses. Even assuming these allegations to be true, Hebert has failed to show that Ehle engaged in constitutionally deficient representation while defending Hebert during the sentencing hearing. Ehle hired a private investigator to look into Bloch's disappearance, cross-examined the Government's key witnesses, introduced evidence, and poked a number of holes in the Government's case during his closing argument. Ehle focused his closing argument on addressing inconsistencies in the Government's time frame regarding Bloch's disappearance. Such a strategy is not objectively unreasonable when one's client is facing a murder charge but the victim's body is nowhere to be found and witnesses claim to have seen the victim alive days after the time period in which the Government alleges that the victim was killed. In sum, Ehle's representation of Hebert during the sentencing hearing was not constitutionally deficient.

## CONCLUSION

For the foregoing reasons, the Court finds that the records of this case conclusively show that Petitioner Hebert is entitled to no relief. Accordingly, the Court need not hold an evidentiary hearing, and Hebert's § 2255 Petition is **DENIED**.

New Orleans, Louisiana this 9th day of July, 2019.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**